UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                                          Chapter 11

WP Realty Acquisition III LLC,                                              Case No. 20-23038-SHL


                                                        Debtor.
---------------------------------------------------------------x

## DEBTOR'S MOTION TO APPROVE NEW STALKING HORSE CONTRACT WITH RELATED BIDDING PROCEDURES AND BREAK-UP FEE RELATING TO THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS

WP Realty Acquisition III LLC (the "Debtor"), by its attorneys, Goldberg Weprin Finkel Goldstein LLP hereby moves (the "Motion") for entry of an order (i) approving a new contract (the "New Stalking Horse Contract") for the sale of the Debtor's development property located at 115-117 Cedar Street, New Rochelle, NY (the "Property") to CS Cedar Street, LLC or its designee as buyer (the "New Stalking Horse") for the sum of $4,800,000, free and clear of all claims, liens and interests pursuant to 11 U.S.C. § 363(b) and (f) and applicable Bankruptcy Rules; and (ii) approving proposed bidding procedures annexed hereto relating to the solicitation of higher and better offers for the Property, including a proposed 2% breakup fee. Copies of the New Stalking Horse Contract and proposed bidding procedures are annexed hereto as Exhibit "A" and Exhibit "B," respectively. In support of this Motion, the Debtor respectfully represents the following:

### Background

1.    The Debtor filed a voluntary Chapter 11 petition on September 11, 2020, and thereafter has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Debtor's primary asset consists of the Property, which was acquired with the intention of pursuing construction, reconstruction, refurbishing and development of the location to build a Hotel and Events Center, with associated retail space and parking, along the I-95 corridor in New Rochelle, NY (the "Project").

3. Substantial start-up costs were expended prior to bankruptcy and the Debtor hoped to continue with the Project after the Chapter 11 filing. However, the post-Covid economic environment proved to be more challenging than anticipated. Thus, the Debtor made the decision to sell the Property in an effort to emerge from Chapter 11.

4. Previously, the Debtor negotiated an earlier Stalking Horse Contract with an entity known as SJM Partners which was approved by the Bankruptcy Court (ECF No. 43) in 2021, but the contract remained subject to a due diligence contingency. Ultimately, SJM Partners exercised its right to terminate the first Stalking Horse Contract and the deposit was returned, with the exception of the agreed "walk-away" payment of $50,000, which was retained by the Debtor's estate.

5. Thereafter, the Debtor and its broker (Newmark) renewed their efforts to seek out other buyers for the Property. This time around, the Debtor sought either an unconditional offer which did not require due diligence or one with limited due diligence, even if it meant receiving a lower purchase price. However, the certainty of completing a transaction is the Debtor's major goal at this point.

6. The renewed marketing efforts have resulted in the execution of a new contract of sale to sell the Property for $4,800,000 to CS Cedar Street, LLC or its designee, as the proposed New Stalking Horse. While the new offer is not entirely unconditional, it is subject only to a limited fifteen (15) day due diligence period (the "Due Diligence Period") relating to geotechnical

matters in connection with the New Stalking Horse's intended use of the Property ("Due Diligence Scope," together with the Due Diligence Period, the "Limited Due Diligence"), with no other due diligence or financing contingencies. The Debtor hereby seeks approval of the New Stalking Horse Contract based upon agreed bidding procedures designed to conduct an auction sale in a prompt fashion (30 days) since the Property has already been extensively marketed.

## Jurisdiction and Venue

7. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are Section 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Approval of the New Stalking Horse Contract and Break-Up Fee

10. This Motion is focused on proceeding with an auction following approval of the New Stalking Horse Contract subject to the Limited Due Diligence.

11. The proposed New Stalking Horse has engaged counsel and already devoted considerable time and effort to the transaction. In the Debtor's view, the New Stalking Horse is a viable candidate, eligible for recognition of a 2% Break-Up Fee to be paid in the event the Property is sold to a purchaser other than the New Stalking Horse.

12. A good deal of case law has developed supporting payment of a break-up fee, which has become an established practice in bankruptcy. As this Court has previously held,

> there are "three questions for courts to consider in assessing [such] break-up fees: (1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather

3

than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?"

In re Genco Shipping & Trading Limited, 509 B.R. 455, 465 (Bankr. S.D.N.Y. 2014) (*quoting* In re Integrated Resources Inc., 135 B.R. 746 (Bankr. S.D.N.Y), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992), *app. dismissed*, 3 F.3d 49 (2d Cir. 1993) (dismissed on jurisdictional grounds but the Court focused on whether the proposed break-up fee will encourage or discourage bidders)). *See, also*, In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).

13. In this case, the proposed break-up fee does not unduly hamper an Auction process and falls within the range of conventional standards.

**Extraordinary Sale Provisions**

14. In compliance with General Order M-383, the Debtor addresses potential Extraordinary Provisions *seriatim*:

    a. Sale to Insider – This is an open sale process, and

    b. Limited Due Diligence – The New Stalking Horse Contract is subject to the Limited Due Diligence.

    c. No Private Sale – The Property is being sold at auction upon receipt of a qualified competing bid.

    d. Notice – No notice limitations are contemplated.

    e. Good Faith Deposit – The New Stalking Horse Contract includes a total deposit of $150,000.

    f. Interim Arrangements with the New Stalking Horse – There are no interim arrangements.

4

    g.    Use of Proceeds – The sale proceeds are expected to be distributed through a Chapter 11 plan of reorganization to be pursued contemporaneously with the auction process.

    h.    Tax Exemption – It is contemplated that a closing will be implemented through a Chapter 11 plan of reorganization, making the transfer of the Property eligible for exemption from state and local transfer taxes.

    i.    Record Retention – The Debtor shall retain all of its books and records.

    j.    Sale of Avoidance Actions – The sale does not include any Chapter 5 avoidance actions.

    k.    Requested Findings as to Successor Liability – The Debtor shall seek a sale of the Property free and clear of all claims, liens, taxes and non-permitted encumbrances.

    l.    Future Conduct – Not applicable.

    m.    Requested Findings as to Fraudulent Conveyances – The Debtor does not seek a finding that the sale of the Property will not constitute a fraudulent conveyance.

    n.    Sale Free and Clear of Unexpired Leases – There are no formal unexpired leases – Property is being sold vacant, with no occupants.

    o.    Relief from Bankruptcy Rule 6004(h) – The Debtor intends to seek relief from the fourteen-day stay imposed by Rule 6004(h).

    p.    Broker - The Debtor has retained Newmark as its real estate broker pursuant to prior Bankruptcy Court order.

### The Bid Procedures

15. The Debtor seeks approval of the attached bidding procedures to be used in conducting an auction which have been developed in consultation with the New Stalking Horse.

### A.    The Sale Should Be Approved

**1.    The Proposed Sale is an Exercise of Sound Business Judgment and Should Be Approved**

16. The Debtor submits that ample authority exists for the approval of the sale of the Property. Although Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have held that approval

5

of a proposed sale of property pursuant to Section 363(b) is appropriate if the transaction represents the reasonable business judgment of the debtor. *See Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

17. If a valid business justification exists for the sale, as it does in this case, the Debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc., supra*, 147 B.R. at 656. Therefore, parties objecting to the Debtor's proposed sale must make a showing of "bad faith, self-interest or gross negligence." Id. at 656; *see also In re Johns-Manville Corp., supra*, 60 B.R. at 616 ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from decisions made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

18. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, supra, 124 B.R. at 176; *In re Phoenix Steel Corp., supra*, 82 B.R. at 335–36. The proposed sale satisfies all these factors.

6

19. <u>First</u>, at this point, the only viable path forward in Chapter 11 is a sale of the Property. This avoids the challenges and the uncertainty of pursuing a redevelopment in today's unsettled markets and enables the Debtor to be in a position to pay its creditors in the fastest possible time.

20. <u>Second</u>, all creditors of the Debtor are receiving notice of this Motion and will have the opportunity to be heard on any matter relating to the proposed sale and bidding procedures.

21. <u>Third</u>, the value the Debtor will receive for the Property reflects current market conditions and is the product of a competitive and arms' length auction process.

22. <u>Fourth</u>, the Debtor has pursued a sale in good faith for well over a year with the goal of obtaining the best possible price.

**2.    The Proposed Sale Should Be Free and Clear**

23. The Debtor also submits that it is appropriate to sell the Property free and clear of all claims, taxes, liens, and non-permitted encumbrances, pursuant to Section 363(f) of the Bankruptcy Code, which authorizes a Trustee to sell assets free and clear of liens, claims and interests if:

> (1)   applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (2)   if such entity consents;
>
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (4)   such interest is in bona fide dispute; or
>
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24. Because Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Debtor's Property "free and clear" of claims, taxes, liens and non-permitted encumbrances. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 24 (6th Cir. 1991) (stating that section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) is met); *In re Dundee Equity Corp.*, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met.").

25. Despite the fact that the Debtor's mortgage holder has moved to convert the Chapter 11 case to a Chapter 7 case, the Debtor believes that the Section 363(f) tests will be satisfied since the proceeds of the proposed sale are sufficient to satisfy the mortgage holder's allowed claim in full.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order approving the New Stalking Horse Contract and related Bidding Procedures, together with such other and further relief as is just and proper.

Dated: New York, New York
May 20, 2022

                                      GOLDBERG WEPRIN FINKEL
                                      GOLDSTEIN LLP
                                      Counsel for the Debtor
                                      1501 Broadway, 22nd Floor
                                      New York, NY 10036
                                      (212) 221-5700


                                  By:   /s/ Kevin J. Nash, Esq.
                                            Kevin J. Nash, Esq.